UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JAIME A.C.L.,

Petitioner,

v.

HOMELAND SECURITY, et al.,

Respondents.

No. 1:26-cv-06636-TLN-CKD

A# 094-275-696

**RELEASE ORDER**

This matter is before the Court on pro se Petitioner Juan A.C.L.'s [1] ("Petitioner") Petition for Writ of Habeas Corpus (the "Petition"). (ECF No. 1.) The matter is fully briefed. (ECF No. 8, 10.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual and Procedural Background

Petitioner is a noncitizen who first entered the United States in 1999 under temporary protected status after a disaster occurred in his country of citizenship. (ECF No. 1 at 24.) Petitioner briefly departed in 2009 and was paroled into the country upon return in 2010. (*Id.* at 9; ECF No. 8 at 9–10.) Petitioner was later re-detained by immigration authorities in November of 2014 and March of 2015. (ECF No. 8 at 9–10, 21–22.) He was apparently released on bond both times. (ECF No. 1 at 12, 24.)

Petitioner has lived in the United States for nearly twenty-eight years. (ECF No. 1 at 24.) In that time, Petitioner married his wife and together they share four United States citizen children, the eldest of whom is a retired U.S. Marine and current reservist. (*Id.*) Petitioner worked, paid taxes, became an active member of his church, and applied to adjust his immigration status. (*Id.* at 11, 24–25.) Petitioner's I-130 petition for alien relative remains pending, and he does not have a final order of removal. (ECF No. 10 at 4–5.) Petitioner has some criminal history, the most severe and recent of which being convictions for aggravated assault with a deadly weapon and criminal mischief in August of 2014. (ECF No. 8 at 30.)

On November 19, 2025, Petitioner was apprehended by Florida Highway Patrol Officers following a traffic stop. (*Id.* at 30.) He was then transferred to the custody of U.S. Immigration and Customs Enforcement ("ICE"), processed as a Notice to Appear, and detained at Alligator Alcatraz. (*Id.* at 30–31; ECF No. 10 at 3.) Petitioner was transferred to various detention centers in California before arriving at the California City Detention Center. (ECF No. 1 at 4; ECF No. 8 at 33, 36.) Petitioner requested a bond hearing but did not receive one due to being transferred. (ECF No. 1 at 25.)

Petitioner has now been detained for over a year. (*Id.* at 2.) Petitioner challenges the lawfulness of his civil detention and seeks immediate release. (*Id.* at 25–29.)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in

custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner claims his detention without notice or a hearing violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 26–27.) In opposition, Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) ("§ 1225(b)(2)") because he was previously paroled into the United States. (ECF No. 8 at 1.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### A. <u>Liberty Interest</u>

"Freedom from imprisonment—from government custody, detention, or other forms of

physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause. The government's repeated decisions to release Petitioner on parole and bond were "implicit promise[s]" that he would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. *Morrissey*, 408 U.S. at 482. Respondents do not claim Petitioner violated the terms of his release. Further, Petitioner has lived in the United States for approximately twenty-eight years. In that time, Petitioner worked, got married, had children, became involved in his community, and pursued an adjustment in his immigration status. The amount of time Petitioner spent living freely in this country and the life he built in that time create a powerful interest for Petitioner in his continued liberty. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–94 (E.D. Cal. 2025) (finding similarly).

The Court rejects Respondents' argument that Petitioner is subject to mandatory detention under § 1225(b)(2). The Ninth Circuit has confirmed that the mandatory detention scheme of § 1225(b)(2) applies only to noncitizens "entering the United States at the border." *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1172 (9th Cir. 2026). In contrast, individuals like Petitioner who are "present without admission who are apprehended in the interior of the United States," are subject to discretionary detention under § 1226(a). *Id.* at 1165. Accordingly, Petitioner is not subject to mandatory detention under § 1225(b)(2). He maintains a clear interest in his continued liberty protected by the Due Process Clause.

B <u>Process Required</u>

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or

substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). These factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

First, as explained above, Petitioner has a significant private interest in his own liberty that is unquestionably affected by the government's actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss. *See Doe*, 787 F. Supp. 3d at 1094 (finding similarly).

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure any detention is reasonably related to those purposes. *Hernandez*, 872 F.3d 976. Respondents do not argue Petitioner is a danger or a flight risk. Indeed, Petitioner was re-detained by ICE twice after his most recent criminal infraction in 2014, and the government released Petitioner from custody both times. In light of those releases and Petitioner's demonstrated ties to his community and interest in continuing to appear at hearings while he pursues immigration relief, the risk that he is being detained without proper justification is exceedingly high.

Finally, the government's interest in detaining Petitioner without notice or a hearing is low, and the effort and cost required to provide him with procedural safeguards are minimal. Notice and custody determination hearings are routine processes for Respondents. Indeed, they are the very processes required under § 1226(a) and its implementing regulations. Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation. Respondents articulate no legitimate interest in detaining Petitioner absent these processes.

Upon consideration of the *Mathews* factors, the Court finds due process required that

Petitioner receive notice and a hearing before a neutral decisionmaker prior to detention to determine whether his detention was justified. He received neither. Petitioner's detention therefore violates the Fifth Amendment Due Process Clause.

## IV. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED. It is FURTHER ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Jaime A.C.L. (A# 2094-275-696) from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions and provide a copy of this Order. Respondents must file a **notice certifying compliance** with this provision **within two (2) court days** from the date of this Order.

2. Respondents are ENJOINED from re-detaining Petitioner, while subject to 8 U.S.C. § 1226(a), absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government must establish by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). At any such hearing, Petitioner shall be allowed to have counsel present. In the event Petitioner becomes subject to a final and executable order of removal, Respondents shall provide a minimum of ten-days' written notice of their intent to detain Petitioner for removal prior to detention. Such notice shall not be issued until the removal order becomes final and executable in accordance with 8 U.S.C. § 1231 and 8 C.F.R. § 1241.1.

3. Petitioner's application to proceed *in forma pauperis* (ECF No. 2) is GRANTED.

4. Petitioner's motion for temporary restraining order (ECF No. 3) and motion to appoint counsel (ECF No. 4) are DENIED as moot.

5. **The Clerk of Court is directed to serve California City Detention Facility with a copy of this Order.**

6. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: November 19, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE